IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OSCAR L. LOZANO BENITEZ (PRO SE),

Plaintiff

v.

HERMENEGILDO RIVERA RUIZ, et als.

Defendants

Civil No. 08-1766(SEC)

**OPINION AND ORDER**

Pending before the Court are Co-defendants Geralda Vázquez Quiñones ("Vázquez"), José E. Rodríguez Cora ("Rodríguez"), and Hermenegildo Rivera Ruiz's ("Rivera") motion to dismiss (Docket # 22), and Plaintiff Oscar L. Lozano Benítez's ("Lozano") opposition thereto (Docket # 23). After reviewing the filings, and the applicable law, Co-defendants' motion to dismiss is **GRANTED in part** and **DENIED in part.**

**Factual and Procedural Background**

Plaintiff filed a Complaint and an Amendment to Complaint (Docket ## 1 & 19) against Defendants seeking redress for the privation of rights suffered by him resulting from alleged mistreatment by Puerto Rico Police Department officers Vázquez, Rodríguez, and Rivera. He also prays for the nullification of three Commonwealth courts judgments in criminal cases against him. Plaintiff alleges that these decisions "were based on fabricated evidence and unlawful procedures followed on [sic] the abuse of authority given to the Defendants by reason of their employment as public officers." See Docket # 1, p. 3. Lozano premised his complaint on 42 U.S.C. §§ 1983 and 1985, and 18 U.S.C. §§ 241 and 242, arguing that his civil rights were deprived due to a conspiration wielded against him by state officials.

**CIVIL NO. 08-1766 (SEC)** Page 2

After several procedural incidents, Defendants filed the present motion (Docket # 22) to dismiss the complaint on the following grounds: (1) Plaintiff's numerous claims are a matter of state law; (2) federal courts lack jurisdiction to review final judgments of state courts, according to the Rooker-Feldman doctrine[1]; and (3) this Court cannot entertain Plaintiff's allegations under the collateral estoppel and/or *res judicata* doctrines. See Docket 22, ¶ 7.

Because the pending motion is a motion to dismiss, this Court takes as true all well pleaded facts contained in the complaint, and draws all reasonable inferences in Plaintiff's favor.

According to the complaint, on the night of July 12, 2007, after being instructed by police to pull over, Lozano stopped his car at a shopping center parking lot in Guayama. The intervening officer, Rodríguez, asked Lozano for his documents, while his partners, officers Vázquez and Rivera, remained close by. In order to reach for his wallet, Lozano stepped out of the car and, once outside, asked Rodríguez about the reason for the intervention. Rodríguez stated that Lozano failed to lower his high intensity lights, and to follow orders from a police officer while driving. A discussion between the two regarding the correct enforcement of the Puerto Rico Transit and Vehicle Act, P.R. LAWS ANN. tit XI, § 5002 et seq. (commonly referred to as Law 22,) ensued, and ended with Rodríguez threatening Lozano with arrest. Rodríguez then allegedly yelled to officer Vázquez requesting reinforcement, stating that he was not going to arrest "this one alone." See Docket # 19, ¶ 6. Lozano, while showing to Rodríguez his documents, asked him for his full name and badge number, to which the officer responded, "I'll give it to you in the police station once I arrest you." Id. When Lozano tried to get Vázquez's name and badge number, he was allegedly assaulted from behind by members of the Tactical Force Division. He claims that they hit him in the face, arms, ears, and feet, and tried to throw him down against the pavement. Lozano also recounts that he experienced asphyxia when

---

[1] This doctrine was created from two United States Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

Tactical Division officers forcefully grabbed him by the neck. During the alleged attack, Lozano pled twice to the officers that he would voluntarily go to the police station in order to stop the violence against him. Notwithstanding, the officers did not stop. In Lozano's account of the events, when he was finally arrested, the group of officers pushed him against another car, Rodríguez twisted his right arm, tightened the handcuffs, lifted him by the arms, and let him fall to the pavement face down. Once in this position, another officer placed a boot on his face so he could not see, while one sat on his back, and yet another tightened even more the handcuffs to the point that Lozano could not feel his fingers.

Already sitting inside a police patrol, Rivera took Lozano's car keys and drove his car to the Salinas police station. Lozano alleges that he was confined in a cell until the early evening of the next day, without ever receiving medical attention or a reading of the Miranda rights. Officers also denied Lozano a telephone call to speak with his family. The only person that was alerted of Lozano's whereabouts was his grandfather, Sergio Benítez Viera, when an officer who identified himself as Rodríguez called him using Plaintiff's cell phone.

At the police station, Lozano alleges that he saw how the officers that intervened with him and claimed to be injured by him waited for more than two (2) hours before leaving to a nearby hospital to have their wounds checked. During this time, Plaintiff states that Rodríguez conducted a search and seizure of his car and personal belongings, filed the transit infraction tickets and "finally went back to Guayama to Hospital Episcopal Cristo Redentor[,] were he arrived alone to reencounter with officer Vázquez who arrived minutes earlier." See Docket # 19, ¶ 11.

Plaintiff also claims that on October 4, 2007, at around 6:15 a.m., Rodríguez and a partner presented themselves at Lozano's workplace "inspecting all the cars that were entering." See Docket # 19, ¶14. This incident happened "after a hearing in which said Co[-] defendant gave incorrect information" about his automobile. Id.

A last episode unfolded on January 27, 2009, when Rodríguez allegedly attempted to falsely accuse Lozano again. However, the intervention was stopped due to the mediation of Rodríguez's immediate supervisor "who responsibly made an effort to understand the situation and did not give merit" to the accusations. See Docket # 23, ¶ 17(b)(i). Afterwards, Lozano filed a new complaint (Complaint No. 2009-09-27-012) with the Police. Id.

**Standard of Review**

*Fed. R. Civ. P. 12(b)(6)*

To survive a Rule 12(b)(6) motion, Plaintiff's "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F.3d 107, 112 (1st Cir. 2008).[2] In evaluating whether Plaintiff is entitled to relief, the court must accept as true all of his "well-pleaded facts [and indulge] all reasonable inferences therefrom" in the Plaintiff's favor. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. However, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (citing Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d

---

[2] FED. R. CIV. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).

**CIVIL NO. 08-1766 (SEC)**                                                                                      Page 5

29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).  Thus, Plaintiff must rely in more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-1950 (2009) (stating  that the doctrine that a court must be compelled to accept as true all of the allegation contained in a complaint "is inapplicable to legal conclusions").

Therefore, "even under the liberal pleading standards of Federal Rule of Civil Procedure 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007) (citing Twombly, 127 S. Ct. at 1965).  Although complaints do not need detailed factual allegations, the "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility  that a defendant has acted unlawfully." Twombly, 127 S. Ct. at 1965; see also Iqbal, 129 S. Ct. at 1949 (2009).  A plaintiff's obligation to "provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965.  That is, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true." Parker v. Hurley, 514 F. 3d 87, 95 (1st Cir. 2008). As the following analysis will show, Plaintiff has set forth a complaint upon which relief can be granted.

**Applicable Law and Analysis**

In light of the above mentioned facts, and the applicable standard of review, this Court examines the claims brought up by Plaintiff on the following grounds: (1) if Co-defendants possess immunity against § 1983 claims; (2) whether there was a state-sponsored conspiracy; and (3) if the Commonwealth's decisions can be nullified.

**CIVIL NO. 08-1766 (SEC)**  **Page 6**

This Court also underscores the particularity of the present case in which Plaintiff comes forth *pro se*. Therefore, it takes "into account the liberal pleading standards applicable to complaints filed by *pro se* plaintiffs." Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993) (citing Denton v. Hernandez, 504 U.S. 25, (1992)). Of course, the above statement does not allow this Court "to conjure up all conceivable unpled allegations to save a legally baseless complaint." See McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979).

*Plaintiff's § 1983 claims*

Contrary to Defendants' Motion to Dismiss (Docket # 22, ¶ 6), the claims made by Lozano fall under this Court's jurisdiction. Section 1983 in itself does not confer substantive rights, but provides a venue for vindicating federal rights elsewhere conferred. See Graham v. Connor, 490 U.S. 386, 393-394 (1989). In order to establish liability under § 1983, a plaintiff must first show that "the conduct complained of was committed by a person acting under color of state law." Gutiérrez Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Saugus v. Voutour, 474 U.S. 1100 (1986); Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1985).

Second, a plaintiff must show that the defendant's conduct deprived him of his rights, privileges or immunities secured by the Constitution or laws of the United States. See Gutiérrez Rodríguez, 882 F.2d at 559. This second prong has two aspects: (1) an actual deprivation of the plaintiff's federally protected rights, and (2) a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. See Gutiérrez Rodríguez, 882 F.2d at 559; Voutour, 761 F.2d at 819. In turn, this second element of causal connection requires that the plaintiff establish for each defendant: 1) that the defendant's own actions deprived the plaintiff of his/her protected rights[3], and 2) that the defendant's conduct was intentional, Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a

---

[3] See Monell v. Department of Social Services, 436 U.S. 658, 694 n. 58 (1978); Gutiérrez Rodríguez, 882 F.2d at 562; and Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989).

**CIVIL NO. 08-1766 (SEC)** Page 7

reckless or callous indifference to the plaintiff's constitutional rights. See Gutiérrez Rodríguez, 882 F.2d at 562.

Plaintiff avers that Defendants are liable under §1983 because they, as police officers, participated in, and witnessed Lozano's arrest. In the particular case of Rodríguez, he used excessive force (*i.e.* violently twisting his arm and causing him to fall on the road) against Lozano, and permitted the aggression unleashed on Lozano by the Tactical Force Division. During these instances, Rivera and Vázquez did nothing to stop this conduct. Given these facts, it is clear that the holding of Graham, 490 U.S. 386, applies to the issue at hand. In this case, the U.S. Supreme Court stated that:

> all claims [in which] law enforcement officers have used excessive force -deadly or not- in the course of an arrest, investigatory stop, or other "seizure"of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

Graham,490 U.S. at 395. Therefore, we must examine Lozano's claim under § 1983 in the light of the Fourth Amendment.

The U.S. Constitution's Fourth Amendment reads:

> The right of the people to be secure in their persons [...] and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

As stated by Plaintiff, his claims arise from the alleged use of excessive force undertaken by the police officers who supposedly stopped, arrested, and detained Lozano without reading him his Miranda rights, or providing any type of medical assistance, and unlawfully searched his car. The Fourth Amendment "provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct [and] must be the guide for analyzing these claims." Graham, 490 U.S. at 395 (1989).

**CIVIL NO. 08-1766 (SEC)**                                                                                         **Page 8**

In order to establish a Fourth Amendment violation based on excessive force, a plaintiff must show that the defendant officer employed force that was unreasonable under the circumstances. Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2008); see also Graham, 490 U.S. at 397. Whether the force used was fair or unfair "must be judged from the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396; see also Tavárez-Guerrero v. Toledo-Dávila, 573 F. Supp.2d 507, 514 (D.P.R. 2008). The unreasonableness inquiry is objective, and should be determined "in light of the facts and circumstances confronting [the officer], without regard to their underlying intent or motivation." Graham 490 U.S. at 397. Moreover, "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to safety of the officers or others, and whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight," are of specific relevance. Id. at 396. Furthermore, this District has held that "[t]he use of excessive force or restraints that cause unnecessary pain [...] are unreasonable actions." Tavárez-Guerrero 573 F. Supp.2d at 514. See also Arizona v. Gant, 129 S. Ct. 1710, 1723 (2009) (holding that police incurs in an unreasonable search of a vehicle when there are no plausible links to believe that the vehicle contains evidence of the offense of arrest).

Plaintiffs' claims under § 1983 are tightly grounded. Lozano alleges that he was stopped without probable cause despite following the officer's orders, suffered an unwarranted physical aggression, and was denied medical attention, and the appropriate reading of his rights. Therefore, this Court concludes that Plaintiff pled a plausible entitlement to relief against Defendants under § 1983, and the Fourth Amendment. As such, Defendants' motion to dismiss on these grounds is **DENIED**.

**CIVIL NO. 08-1766 (SEC)**                                                                                     **Page 9**

*Plaintiff's § 1985 claim*

Lozano also raises a civil conspiracy claim under 42 U.S.C. § 1985 against Defendants who allegedly violated his civil rights during the unlawful arrest and detention, and conspired against him by fabricating accusations. It is difficult to discern which subsection of § 1985 supports Lozano's claim due to the fact that he does not address it in the complaint, however, after examining both, the section and his allegations, this Court contends that the only applicable subsections are (2) and (3).[4]

Section 1985 dates back to the enactment by Congress of the Thirteenth Amendment to the U.S. Constitution, as an enforcement vehicle in order to provide black citizens equal protection of the laws, and to rectify preexisting moral and physical inhumanities. Jones v. Alfred H. Mayer Co., 392 U.S. 409 (1968); see also Heyn v. Board of Sup'rs of Louisiana State University, 417 S. Supp. 603 (E.D.La. 1976). This original purpose explains why § 1985 was not intended to apply to all tortious interferences with rights of others, but only to those which are founded upon some class-based or racial invidiously discriminatory intent. Maida v. Andros, 710 F. Supp. 524 (D.N.J.1988); see also Puentes v. Sullivan, 425 F. Supp. 249 (W.D.Tex.1977); Brainerd v. Potratz, 421 F. Supp.836 (N.D.Ill.1976); Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO, 415 F. Supp. 30 (S.D.Cal.1976).

Under § 1985 (2), the act to obstruct justice with the intent to deny equal protection of the laws is prohibited. 42 U.S.C. § 1985 (2). A claim under this subsection must include allegations that the conspiracy involved " racial, or [...] otherwise class-based, invidiously discriminatory

---

[4] "The remaining two categories, however, encompass underlying activity that is not institutionally linked to federal interests and that is usually of primary state concern. The second part of § 1985(2) applies to conspiracies to obstruct the course of justice in state courts, and the first part of § 1985(3) provides a cause of action against two or more persons who "conspire or go in disguise on the highway or on the premises of another." (footnote omitted). Each of these portions of the statute contains language requiring that the conspirators' actions be motivated by an intent to deprive their victims of the equal protection of the laws. Kush v. Rutledge, 460 U.S. 719, 725 (1983).

**CIVIL NO. 08-1766 (SEC)**                                                                                                    Page 10

animus." Davis v. Township of Hillside, 190 F.3d 167, 171 (3d Cir.1999) (quoting Kush, 460 U.S. at 725.).  Lozano, in his account of the events, has not shown a racial "discriminatory animus" directed against him.

To state a cause of action under § 1985 (3), plaintiff must show:  (1) a conspiracy, (2) a set purpose for, either directly or indirectly, depriving any person or class of persons the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act in furtherance of said conspiracy, and (4) a resulting individual either injured in his person or property or deprived of any right of privilege of citizenship. Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); see also United Broth. of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott, 463 U.S. 825, 829 (1983); Cruz Velázquez v. Rodríguez Quiñones, 550 F. Supp.2d 243, 251 (D.P.R. 2007) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)). The facts set forth by Lozano in his complaint (Docket ## 1 & 19) do not state, nor even suggest, any of these four (4) elements.

This Court does not deny *pro se* litigants "the opportunity to state a civil rights claim because of technicalities." Kauffman v. Moss, 420 F.2d 1270, 1276 (3rd Cir. 1970).  However, the law on this point is clear when it states that in order to uphold a conspiracy plead under these subsections, the plaintiff must be specific in the facts presented in the allegation. Rossi-Cortés v. Toledo-Rivera, 540 F. Supp.2d 318, 328 (D.P.R. 2008) (citing Rolón v. Rafael Rosario & Assocs., 450 F. Supp.2d 153, 159 (D.P.R. 2006)); see also Soto v. Schembri, 960 F. Supp. 751 (S.D.N.Y.1997).  Accordingly, a plaintiff must: "(1) expressly claim that an agreement was formed between conspirators, or (2) make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Rossi-Cortés, 540 F.Supp.2d at 328 (citing Rolón, 450 F. Supp.2d at 159-160).

Lozano fails to relate specific facts and allegations that this Court could consider to examine whether the police officers' actions were taken or staged as part of a conspiration to

**CIVIL NO. 08-1766 (SEC)**                                                                                          Page 11

violate his civil rights.  If a complaint fails to elaborate or substantiate bald claims that the defendants conspired with one another, dismissal of the §1985 claims is warranted. <u>Rossi-Cortés</u>, 540 F. Supp.2d at 328 (quoting <u>Slotnick v. Garfinkle</u>, 632 F.2d 163, 166 (1st Cir.1980)). Consequently, as the legal conclusions presented by Lozano on this count are insufficient to allege a conspiracy for purposes of this subsection, his claims are hereby **DISMISSED with prejudice**.

*Eleventh Amendment Immunity of officers Rodríguez, Vázquez, and Ruiz*

Plaintiff's claims arise from alleged violations committed by Defendants in their official capacity as officers of the Police Department, an arm of the Commonwealth of Puerto Rico. This situation posits an unavoidable question of immunity under the Eleventh Amendent to the United States Constitution, which states:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.[5]

Although the Eleventh Amendment seems to apply only to suits against a State by citizens of another State, the Supreme Court has consistently extended the scope of this Amendment to suits by citizens against their own State. See <u>Board of Trustees of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 362 (2001); <u>see also</u> <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 72-73 (2000); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15 (1890). The Commonwealth of Puerto Rico is not a state, but it enjoys the protection of the Eleventh Amendment. See <u>Jusino-Mercado v. Commonwealth of Puerto Rico</u>, 214 F.3d 34, 37 (1st Cir. 2000); Ortiz Feliciano v. Toledo-Dávila, 175 F.3d 37,

---

[5] The Supreme Court has established that the Eleventh Amendment protection primarily furthers two goals: the protection of a state's treasury, and the protection of its dignitary interest of not being haled into federal court. Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & the Caribbean Cardiovascular Ctr. Corp., 322 F.3d 56, 61 (1st Cir. 2003) (citing <u>Fed. Mar. Comm'n v. S.C. State Ports Auth.</u>, 535 U.S. 743 (2002)).

**CIVIL NO. 08-1766 (SEC)**                                                                                                      Page 12

39 (1st Cir. 1999); Futura Development v. Estado Libre Asociado, 144 F.3d 7,12-13 (1st Cir. 1998); Ramírez v. Puerto Rico Fire Servs., 715 F.2d 694, 697 (1st Cir. 1984).

The Eleventh Amendment bar extends to governmental instrumentalities which are an arm or "alter ego" of the State. See Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R., 818 F.2d. 1034, 1036 (1st Cir. 1987); Ochoa Realty Corp. v. Faría, 618 F. Supp. 434, 435 (D.P.R. 1985); Pennhurst State Sch. Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 280-281 (1977); Ursulich v. P.R. Nat'l Guard, 384 F. Supp. 736, 737-38 (D.P.R. 1974). It also protects state officials in their official capacity. The rationale behind this extension of the Eleventh Amendment protection is that a claim against a state official in his or her official capacity for monetary relief is an action for the recovery of money from the State. Ford Motor v. Dept. of Treasury, 323 U.S. 459 (1945); Will v. MichiganDept. of State Police, 491 U.S. 58, 71 (1989). Hence, a claim against a state official in her official capacity for monetary relief is, in essence, a claim against the State.

However, Eleventh Amendment immunity is not absolute and may be waived by the state or "stripped away" by Congress. Metcalf & Eddy v. P.R.A.S.A., 991 F.2d 935, 938 (1st Cir. 1993). There are four (4) circumstances into which Eleventh Amendment protection unravels: (1) when a state consents to be sued in a federal forum; (2) when a state waives its own immunity by statute or the like; (3) when Congress abrogates state immunity ("so long as it speaks clearly and acts in furtherance of particular powers"); and (4) when, provided that circumstances allow, other constitutional imperatives take precedence over the Eleventh Amendment's protection. Id. at 938 (citations omitted). Despite number two above, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically mean that it waived its immunity in federal court. See Díaz-Fonseca v.Commonwealth of Puerto Rico, 451 F. 3d 13, 33 (1st Cir. 2006) (holding that although the

**CIVIL NO. 08-1766 (SEC)**                                                                 Page 13

Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court).

That the Puerto Rico Police Department is an arm or *alter ego* of Puerto Rico has been established by this district on numerous occasions.[6] See, e.g., Nieves-Cruz v. Comm. of P.R., 425 F. Supp. 2d 188, 192 (D. P. R. 2006); López-Rosario v. Police Dept., 126 F. Supp. 2d 167, 170-171 (D.P.R. 2000); Aguilar v. Comm. of P.R., 2006 WL 3000765 at *1; Suárez-Cestero v.Pagán-Rosa, 996 F. Supp. 133, 142-43 (D.P. R. 1998). Therefore, this Court need not dwell on this point. As such, Plaintiff's claims against Defendants in their official capacity are **DISMISSED with prejudice**.

*Qualified Immunity of officers Rodríguez, Vázquez, and Ruiz*

Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1stCir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: "(1) whether the plaintiff has alleged a constitutional violation; (2) whether the law clearly established that defendant's action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11.

---

[6] The Supreme Court requires a two-step analysis in order to determine whether a government institution is an arm or *alter ego* of the state and thus entitled to immunity under the Eleventh Amendment. Fresenius Med. Care, 322 F.3d at 65 (citing and discussing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30 (1994)). First, the court must analyze how the state has structured the government institution and, second, if the "structural indicators point in different directions," the risk of the damages being paid from the public treasury should be assessed. Id. at 65-69.

At this stage, this Court has concluded that Lozano pled a viable § 1983 cause of action against Defendants. Therefore, this Court cannot conclude that Lozano has failed to allege that Defendants violated his constitutional rights. Moreover, according to the facts of the complaint, Rodríguez, Vázquez, and Rivera should have understood that their actions or omissions constituted a violation of Plaintiff's constitutional rights. This Court finds that a reasonable official would not have believed that the acts allegedly committed by this trio of police officers were lawful, in light of clearly established law. Moreover, any reasonable police officer is aware that it is unlawful to use violence and excessive force when stopping and arresting an individual, especially when, as Lozano alleges, he did not show a suspicious behavior, and only questioned officer Rodríguez about the infraction for which he was detained. See Docket # 19, ¶ 6. At this point, this Court cannot conclude, without making factual determinations, that Rodríguez, Vázquez, and Rivera acted reasonably under the circumstances, and are entitled to qualified immunity. Therefore, their motion to dismiss on this ground is **DENIED.**

*Plaintiff's request to nullify State Court decisions*

Lozano also attempts to nullify three Commonwealth court decisions on the grounds that the accusations, and verdicts served "were based on fabricated evidence and unlawful procedures." See Docket #1, p.3. In this respect, the law does not favor the relief he is seeking, since the doctrine denies federal district courts from reviewing final judgments of state courts, a power exclusively conferred to the Supreme Court of the United States. Davison, M.D. v. Government of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220 (1st Cir. 2006). The proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal from the highest state court's final judgment. Id. at 223.

The Supreme Court, in Exxon Mobil Corp. V. Saudi Basic Industries Corp., 544 U.S. 280 (2005), held that the lower courts cannot rely on Rooker-Feldman to dismiss a case if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused

**CIVIL NO. 08-1766 (SEC)**                                                                 Page 15

by the state court judgment.  Id. at 284; see also Todd v. Weltman, Weinberg & Reis Co., 434 F.3d 432, 437 (6th Cir. 2006) (reiterating that Rooker-Feldman does not apply when the Plaintiff complains of a wrong independent of injuries caused by a related state court judgment). According to Davison, M.D., 471 F.3d at 223, the "Rooker-Feldman squarely applies when a plaintiff insists that [the district court] must review and reject a final state court judgment."

Additionally, this Court also recognizes that under the well-known doctrines collateral estoppel and *res judicata*, it cannot entertain Plaintiff's allegations on this matter. Doing so would necessarily mean changing what has already been decided by a court with jurisdiction, and whose judgment is already final and unappealable. As such, Plaintiff's request to nullify state court decisions is hereby **DENIED**.

**Conclusion:**

In light of the above discussion, Co-defendants' motion to dismiss (Docket # 22) is **GRANTED in part** and **DENIED in part**. Partial judgment will be entered accordingly.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, this 6th day of July, 2009.

*S/Salvador E. Casellas*
Salvador E. Casellas
U.S. District Judge